**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE No.: 22-cv-21991-JEM/Becerra

CARLOS JAVIER BRIOSO,

     Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

_____/

**REPORT AND RECOMMENDATION**
**ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**THIS CAUSE** came before the Court on the Parties' cross motions for summary judgment.[1]  Plaintiff Carlos Javier Brioso filed his Motion for Summary Judgment ("Plaintiff's Motion").  ECF No. [16].  Defendant, the Acting Commissioner of Social Security ("Commissioner"), filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment ("Defendant's Motion").  ECF Nos. [20], [21].[2]  Plaintiff filed a Reply.  ECF No. [22].  The Court must now determine whether the decision reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and whether the correct legal standards were applied.  After a careful review of the Motions, the record, and all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **GRANTED** and that Defendant's Motion be **DENIED**.

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge.  ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for Summary Judgment, ECF No. [21], it is the same document as Defendant's Motion, ECF No. [20].

I.      BACKGROUND

On January 24, 2020, Plaintiff filed a Title II application for disability insurance benefits, alleging a disability onset date of January 1, 2017.  R. 225-6.[3]  Plaintiff was 31 years old at the time he filed his application, and was 27 years old on the alleged disability onset date.  R. 225. Plaintiff's application was denied initially and on reconsideration. R. 110-13, 120-25.   At Plaintiff's request, the ALJ held a hearing on May 3, 2021, which Plaintiff and his attorney attended. R. 46-77. Plaintiff testified at the hearing, along with a vocational expert.  *Id*.  On September 24, 2021, the ALJ issued a written decision in which she concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  R. 29-40.  The Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the final decision of the Commissioner. R. 11-14.  Plaintiff thereafter filed the instant action.  ECF No. [1].

A.  The SSA Hearing

Plaintiff testified that he has been unable to retain full-time employment since 2016 because of various physical and mental ailments, namely (i) gastrointestinal problems that cause abdominal pain, bloody stools and frequent bathroom use; (ii) body pain; (iii) depression; (iv) memory and attention span difficulties; and (v) anxiety.  R. 58-61.  Plaintiff estimated that he uses the bathroom two or three times in a three-to-four-hour period.  R. 59.  Plaintiff explained that he spends three to four hours a day in the bathtub because it alleviates his pain and makes him feel safe.  R. 58-59.  Plaintiff testified that he uses cannabis five times a week at night because it helps him sleep, as well as helps with his anxiety and pain.  R. 70.

---

[3] References herein to "R. at ___" are to the Social Security transcript, which can be found at ECF No. [11].  The page numbers to the transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

Plaintiff stated that he lives with a roommate who does most of the household cleaning and shopping.  R. 64-65. Plaintiff receives unemployment benefits which is his only source of income, other than "little odd jobs…like cleaning an office" that he does once or twice a month.  R. 69-71. Plaintiff testified that he is "ready and willing" to work but "every time [he] get[s] hired, he "always get[s] fired" because of his "constant use in the bathroom[.]" R. 69.  Plaintiff explained that he is "a people person" and was "an athlete … a martial artist and … used to love to work" but he "lost all of that … and ha[s] no motivation."  R. 73.

**B.  The ALJ's Opinion**

As relevant to the Motions, the ALJ found that Plaintiff has the severe impairments of: (i) dysfunction – major joints, (ii) obesity, (iii) hypertension, (iv) substance addiction disorder (drugs), (v) depressive, bipolar, and related disorders, (vi) ulcerative colitis and (vii) gastroesophageal reflux disease (GERD).  R. 31.  The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that he can: (i) occasionally climb ramps and stairs; (ii) never climb ladders, ropes or scaffolds, (iii) occasionally balance, stoop, kneel, crouch, and crawl; (iv)  tolerate occasional exposure to hazards; (v) understand, remember, and carry out instructions involving no more than three steps; (vi) perform simple tasks for up to two hours without a break; (vii) use judgment to make simple work-related decisions in an environment with no more than occasional workplace changes; and (viii) occasionally interact with supervisors, coworkers, and the general public.  R. 33.

In explaining the RFC, the ALJ evaluated the medical opinions of Plaintiff's treating physicians as follows:

> Igor Vaz, M.D., opined that the claimant would need eight to 10 unscheduled breaks during a workday, each lasting approximately 15 to 20 minutes, and he would be absent from work more than four days per month (Ex. 11F). Daniel Carpman, M.D., asserted that the claimant would require

nine to 10 unscheduled breaks and would be absent more than four days per month (Ex.14F). Mercy Gonzalez, M.D., stated that the claimant is seriously limited in his ability to understand, remember, and carry out detailed instructions, and he would be absent from work about four days per month (Ex. 12F). Meanwhile, Tymara Riddick, M.S., assessed that the claimant would be absent from work about three days per month, and is unable to meet competitive standards in working with others without being unduly distracted, or in performing at a consistent pace without an unreasonable number of rest periods (Ex. 13F). The opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez, and Ms. Riddick are overly restrictive in light of the objective medical evidence of record. The claimant consistently displays normal motor strength in the bilateral upper and lower extremities (Ex. 1F/1, 5F, 10F/8, 19F) and straight leg raise tests are negative bilaterally (Ex. 5F, 19F/7). His sensation is intact (Ex. 1F/1, 1F/3, 5F) and he ambulates with a normal gait (Ex. 2F/3, 5F, 17F, 19F/7). Mental status examinations are generally within normal limits, documenting a logical and goal-directed thought process (Ex. 6F/21, 9F/9, 10F/37, 10F/60, 19F/4). He is cooperative (Ex. 1F/1, 1F/3, 2F/3, 6F/12, 10F/8, 17F 19F/2), fully oriented (Ex. 2F/3, 6F/20, 9F/9, 10F/36, 10F/60, 17F, 19F/2), and his speech appears adequate (Ex. 2F/3, 6F/21, 8F/4, 9F/9, 10F/4, 10F/37, 17F).

R. 37-38.

The ALJ found that Plaintiff is not capable of performing his past relevant work as a parking garage supervisor and bellman.  R. 38-39.  Based on testimony of the vocational expert, and in light of Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff was not disabled because other jobs exist in significant numbers in the national economy that Plaintiff is capable of performing, namely "Table Worker," "Final Assembler" and "Semi-Conductor Bonder." Tr. 39-40.

### C.  The Challenged Medical Opinions

The primary basis of Plaintiff's Motion is that the ALJ failed to properly evaluate the medical opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick.  Set forth below is a summary of each of those opinions.

### 1. Dr. Igor Vaz

Dr. Igor Vaz, Plaintiff's primary care physician, saw Plaintiff bi-monthly.  R. 547.  On April 1, 2021, he issued a Physical Medical Opinion identifying Plaintiff's diagnoses and functional limitations.  R. 547-551.  Dr. Vaz diagnosed Plaintiff with major depressive disorder, chronic diarrhea with blood and mucus, and ulcerative colitis.  R. 547.  He identified Plaintiff's symptoms as "abdominal pain, rectal bleeding with pus, fatigue, urgency to defecate and inability to defecate despite urgency, [and] inflammation in abdominal area including cramps all over the body."  *Id*.  Dr. Vaz also stated that Plaintiff has not responded to treatment.  *Id*.

Dr. Vaz opined that Plaintiff could sit for thirty to forty-five minutes at a time due to "urgency to use bathroom" and could stand for twenty to thirty minutes at one time due to "fatigue and sweating."  R. 548.  Dr. Vaz further opined that Plaintiff would need eight to ten unscheduled breaks during a workday, each lasting fifteen to twenty minutes, caused by bloody stool or diarrhea and mucus.  *Id*.  Dr. Vaz stated that Plaintiff's ability to work on a sustained basis would be affected by his "lack of focus and motivation, restlessness and anxiety, memory loss and difficulty hearing, forgetfulness, and excessive sweating and fatigue."  *Id*.  Dr. Vaz opined that Plaintiff would be off task twenty-five percent of the time during a typical workday as a result of his symptoms, and would be absent from work more than four days a month.  *Id*.

### 2. Dr. Carpman

Dr. Daniel Carpman saw Plaintiff monthly and treated him for pain.  R. 564.  On April 27, 2021, Dr. Carpman issued a Physical Medical Opinion identifying Plaintiff's diagnoses and functional limitations.  R. 564-68.  He diagnosed Plaintiff with "low backpain, other intervertebral disc displacement, lumbar region."  R. 564.  Dr. Carpman identified Plaintiff's symptoms as "pain, muscle spasm, fatigue, [and] numbness in both arms and legs."  *Id*.  Dr. Carpman opined that

Plaintiff could sit for fifteen to twenty minutes at a time, and stand for ten minutes at a time. *Id.* at 565. He further opined that Plaintiff would need nine to ten unscheduled breaks during the workday, each lasting twenty minutes, as a result of muscle weakness, chronic fatigue, and pain and numbness. *Id.* Like Dr. Vaz, Dr. Carpman opined that Plaintiff would be off task twenty-five percent of the time during a typical workday as a result of his symptoms, and would be absent from work more than 4 days a month. R. 567. Finally, Dr. Carpman stated that "[d]ue to his physical conditions, [Plaintiff] has limited capacity to work." *Id.*

### 3. Dr. Gonzalez

Dr. Mercy Gonzalez, a psychiatrist, saw Plaintiff on four occasions: (i) July 13, 2020, (ii) September 16, 2020, (iii) October 23, 2020, and (iv) January 19, 2021. R. 552. On April 22, 2021, Dr. Gonzalez issued a Mental Medical Opinion identifying Plaintiff's diagnoses, her clinical findings, and Plaintiff's mental and emotional capabilities. R. 552-57. Dr. Gonzalez diagnosed Plaintiff with "panic disorder, generalized anxiety, and major depressive disorder recurrent moderate." R. 552. She listed the following clinical findings: "anxious affect, depressed mood, fidgety, restless at times, numerous medical issues worsen his mental health." *Id.* Dr. Gonzalez stated that Plaintiff had a partial response to treatment and a fair prognosis. *Id.*

Dr. Gonzalez opined that Plaintiff had a "limited but satisfactory" ability to (i) remember work-like procedures, (ii) understand, remember and carry out very short and simple instructions, (iii) work in coordination with or proximity to others without being unduly distracted, (iv) ask simple questions or request assistance, (v) accept instructions and respond appropriately to criticism from supervisors, (vi) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (vii) respond appropriately to changes in a routine work setting, (viii) deal with normal work stress, (ix) be aware of normal hazards and take appropriate

precautions, (x) interact appropriately with the general public, (xi) maintain socially appropriate behavior, (xii) adhere to basic standards of neatness and cleanliness, (xiii) travel in an unfamiliar place, and (xiv) use public transportation.  R. 554-55.  She further opined that Plaintiff had a "seriously limited" ability to (i) maintain attention for a two hour period, (ii) maintain regular attendance and be punctual within customary, usually strict tolerance, (iii) sustain an ordinary routine without special supervision, (iv) complete a normal workday and workweek without interruptions from psychologically based symptoms, (v) perform at a consistent pace without an unreasonable number and length of rest periods, (vi) understand, remember and carry out detailed instructions, (vii) set realistic goals or make plans independently of others, and (viii) deal with stress of semiskilled and skilled work.  *Id*.  Dr. Gonzalez identified Plaintiff's anxiety, depression and ulcerative colitis as the medical findings that supported the serious limitations she noted.  R. 555.  Similar to Dr. Vaz and Dr. Carpman, Dr. Gonzalez stated that Plaintiff would be absent from work four days per month.  R. 556.

### 4.  Ms. Riddick

Tymara Riddick, a therapist at Jackson Community Mental Health Center, completed a Mental Medical Opinion on April 26, 2021.  R. 558-563.  She stated that Plaintiff began their program in June 2020 and has been attending therapy sessions twice per month.  R. 558.  Ms. Riddick identified Plaintiff's diagnoses as major depressive disorder moderate without psychosis, generalized anxiety disorder, "chronic bilateral" and chronic backpain.  *Id*.  She stated that Plaintiff has difficulty completing daily tasks as a result of his anxiety and depression.  *Id*.  Ms. Riddick also stated that Plaintiff "has difficulties processing his thought with rational and consistent or appropriate behavior patterns."  R. 563.

Ms. Riddick identified more substantial limitations than Dr. Gonzalez. In particular, she found that Plaintiff was "unable to meet competitive standards" with regard to (i) working in coordination with or proximity to others without being unduly distracted, (ii) completing a normal workday and workweek without interruptions from psychologically based symptoms, (iii) performing at a consistent pace without an unreasonable number and length of rest periods, (iv) responding appropriately to changes in a routine work setting, (v) dealing with normal work stress, and (vi) being aware of normal hazards and taking appropriate precautions. R. 560. Ms. Riddick also found that Plaintiff was "seriously limited" in his ability to (i) remember work-like procedures, (ii) understand, remember and carry out very short and simple instructions, (iii) maintain regular attendance and be punctual within customary, usually strict tolerance, (iv) sustain an ordinary routine without special supervision, and (v) ask simple questions or request assistance. R. 560-61.

Ms. Riddick further found that Plaintiff had a "limited but satisfactory" ability to (i) sustain an ordinary routine without special supervision, (ii) accept instructions and respond appropriately to criticism from supervisors, (iii) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (iv) understand, remember and carry out detailed instructions, (vii) set realistic goals or make plans independently of others, and (viii) deal with stress of semiskilled and skilled work. *Id*. Ms. Riddick's findings in these final three categories (detailed instructions, realistic goals/plans, and stress) were less restrictive than those of Dr. Gonzalez. Additionally, unlike Dr. Vaz, Dr. Carpman and Dr. Gonzalez, Ms. Riddick found that Plaintiff be absent from work three days per month. R. 562.

### D.  The Instant Motions

Plaintiff filed a Motion for Summary Judgment arguing that the ALJ erred in evaluating the medical opinion evidence.  ECF No. [16].  In particular, Plaintiff argues that the ALJ failed to provide a statement of persuasiveness and a discussion of the supportability and consistency factors for the medical source opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick. *Id*. at 5-11.  Plaintiff also argues that the ALJ did not sufficiently address the supportability and consistency factors in her evaluation of the State agency findings and opinions of consultative examiners, Dr. Afzal Khan and Dr. Mirentxu Leiva. *Id*. at 9-10.  Plaintiff further argues that the ALJ erred in grouping the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick together in a single evaluation because the governing regulations do not permit the grouping of opinions from different medical sources. *Id*. at 8.  Plaintiff asserts that the ALJ's errors are harmful because the limitations found by these physicians conflict with the RFC, rendering the ALJ's decision unsupported by substantial evidence.

The Commissioner filed a Response, arguing that Plaintiff failed to meet his burden of proving that he was disabled within the meaning of the Social Security Act, and substantial evidence supports the ALJ's evaluation of the opinion evidence.  Specifically, the Commissioner argues that the applicable regulations do not require the ALJ to use "magic language" to articulate consideration of the supportability and consistency factors.  ECF No. [21] at 8-10. The Commissioner also argues that the ALJ specifically identified what aspects of the medical opinions were unsupported by and inconsistent with the record. *Id*. at 11-14.  Further, the Commissioner argues that the ALJ did not improperly group together the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick because the applicable regulation "envision[s] combining multiple

opinions from the same source" and "does not require that an ALJ discuss each opinion[']s consistency and supportability separate from one another." *Id*. at 10.

In Reply, Plaintiff reiterates that the ALJ "did not make the findings required by the applicable regulation, rendering the decision legally insufficient and unsupported by sufficient rationale." ECF No. [22] at 1-2. Plaintiff asserts that the Commissioner merely points to the ALJ's summary of portions of certain medical records when discussing the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick, which is insufficient to satisfy the requirement that the ALJ explain how she considered the supportability and consistency factors. *Id*. at 3-4. Plaintiff also notes that the Commissioner fails to reconcile the fact that the ALJ specified the persuasiveness of other medical source opinions, and addressed the supportability and consistency of those opinions, but not the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick. *Id*. Finally, Plaintiff reiterates that the ALJ "improperly grouped opinions from multiple different specialties within a single evaluation." *Id*. at 2-3.

## II.     STATUTORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Plaintiff bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[4] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work given his RFC;[5] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

The issue in this case centers on step four and, in particular, whether the RFC is based upon substantial evidence. In determining a claimant's RFC, "the ALJ must consider all medical opinions in the claimant's case record together with other pertinent evidence." *Duffy v. Comm'r*

---

[4] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1522(a)–(b).

[5] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a)(1).

*of Soc. Sec.*, 736 F. App'x 834, 836 (11th Cir. 2018) (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)). The ALJ's assessment must be "based on all relevant medical and other evidence, of a claimant's remaining ability to work despite [a claimant's] impairment." *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [the ALJ's] decision," however, the ALJ's decision must contain sufficient detail so that the court can determine that the ALJ considered the claimant's medical condition as a whole. *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 968 (11th Cir. 2015); *see Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 601–02 (11th Cir. 2017) (noting that although the opinion "need not specifically refer to every piece of evidence, [it] must contain sufficient detail so that [the court] can conclude that the ALJ considered the claimant's medical condition as a whole in assessing her residual functional capacity").

In evaluating medical opinions, the applicable regulation instructs that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ... including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must determine the persuasiveness of a medical opinion using the following factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) the medical source's specialization and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). The most important factors are supportability and consistency, and the ALJ must explain how she considered them. 20 C.F.R. § 404.1520c (b)(2) ("The factors of supportability…and consistency…are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

"Other than articulating h[er] consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how [s]he considered any other factor in determining persuasiveness." *Klucsarits v. Comm'r of Soc. Sec.*, No. 20-14376-Civ, 2022 WL 1664133, at *6 (S.D. Fla. April 13, 2022) (citations omitted).  Supportability refers to "the extent to which a medical source has articulated support for the medical source's own opinion." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-cv-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. § 404.1520c(1)).  Consistency looks to "the relationship between a medical source's opinion and other evidence within the record." *Id.* (citing 20 C.F.R. § 404.1520c(2)).

The ALJ must also specify how persuasive she found the medical opinion under consideration.  20 C.F.R. § 404.1520c (b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions… in your case record.").  In sum, the ALJ must state the persuasiveness of the medical source's opinion and explain whether it is supported by the source's own records and consistent with the other evidence of record. *Id.*  For the reasons explained below, the ALJ did not do so here.

## III.   STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to

support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015). Even if the Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See Ellison*, 355 F.3d at 1275. In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *Id.* However, no presumption of validity attaches to the ALJ's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

The undersigned has thoroughly reviewed the entire record, which includes Plaintiff's medical records and the transcript of the hearing before the ALJ. In analyzing the issues raised in the Motions, the undersigned references the administrative record as it is relevant.

## IV.    ANALYSIS

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez, and Ms. Riddick (collectively, the "Challenged Medical Opinions"). Plaintiff offers two reasons why this is so: (1) the ALJ "neither provided a statement of persuasiveness nor a discussion of

supportability and consistency" for the Challenged Medical Opinions, and (2) improperly grouped the Medical Opinions into a single evaluation.  For the reasons explained below, the undersigned agrees.[6]

### A. The ALJ Erred In Failing To State The Persuasiveness Of The Challenged Medical Opinions And Explain Her Consideration Of The Supportability And Consistency Factors.

Plaintiff argues that in discussing the Challenged Medical Opinions, the ALJ did not make a finding as their persuasiveness, nor did she explain her consideration of the supportability and consistency factors.  In her decision, the ALJ stated as follows:

> Igor Vaz, M.D., opined that the claimant would need eight to 10 unscheduled breaks during a workday, each lasting approximately 15 to 20 minutes, and he would be absent from work more than four days per month (Ex. 11F). Daniel Carpman, M.D., asserted that the claimant would require nine to 10 unscheduled breaks and would be absent more than four days per month (Ex. 14F). Mercy Gonzalez, M.D., stated that the claimant is seriously limited in his ability to understand, remember, and carry out detailed instructions, and he would be absent from work about four days per month (Ex. 12F). Meanwhile, Tymara Riddick, M.S., assessed that the claimant would be absent from work about three days per month, and is unable to meet competitive standards in working with others without being unduly distracted, or in performing at a consistent pace without an unreasonable number of rest periods (Ex. 13F). The opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez, and Ms. Riddick are overly restrictive in light of the objective medical evidence of record. The claimant consistently displays normal motor strength in the bilateral upper and lower extremities (Ex. 1F/1, 5F, 10F/8, 19F) and straight leg raise tests are negative bilaterally (Ex. 5F, 19F/7). His sensation is intact (Ex. 1F/1, 1F/3, 5F) and he ambulates with a normal gait (Ex. 2F/3, 5F, 17F, 19F/7). Mental status examinations are generally within normal limits, documenting a logical and

---

[6] As mentioned, Plaintiff also argues that the ALJ did not adequately address the supportability and consistency factors with respect to the State agency findings and opinions of Dr. Khan and Dr. Leiva.  It is unnecessary to address this argument given that the ALJ's errors regarding the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick require remand, and thus the ALJ will have to reweigh the evidence and may revise her analysis regarding the State agency findings and consultative examiner opinions.  *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (where case remanded for failure to properly evaluate physician's opinion, declining to address plaintiff's other challenge to ALJ's consideration of different physician's opinion).

goal-directed thought process (Ex. 6F/21, 9F/9, 10F/37, 10F/60, 19F/4). He is cooperative (Ex. 1F/1, 1F/3, 2F/3, 6F/12, 10F/8, 17F 19F/2), fully oriented (Ex. 2F/3, 6F/20, 9F/9, 10F/36, 10F/60, 17F, 19F/2), and his speech appears adequate (Ex. 2F/3, 6F/21, 8F/4, 9F/9, 10F/4, 10F/37, 17F).

R. 37-38.  The ALJ did not mention persuasiveness at all, nor did she mention supportability or consistency.   The applicable regulation is clear: the ALJ is required to "articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions…" and "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions…."  20 C.F.R. § 404.1520c(b), (b)(2).

This is not to say that the ALJ must use "magic language" as Defendant correctly notes.[7] However, a reviewing court must be able to discern whether the ALJ found the medical opinion persuasive, and the basis of the ALJ's findings as to supportability and consistency.  As another district court in this Circuit recognized, "[t]he new regulations require an ALJ to articulate the persuasiveness of all medical opinions in the case record" and "assess their persuasiveness, and *explain* his decision, particularly with respect to supportability and consistency."  *Brown v. Comm'r of Soc. Sec.*, No. 6:20-cv-840-GJK, 2021 WL 2917562, at *4 (M.D. Fla. July 12, 2021).

Here, the ALJ merely stated that the Challenged Medical Opinions were "overly restrictive." R. 37.  This statement does not indicate how persuasive the ALJ found those opinions. The ALJ also does not explain whether or how she considered the supportability and consistency

---

[7] *See Arce v. Comm'r of Soc. Sec.*, No. 21-14097-CIV, 2022 WL 18717739, at *11 (S.D. Fla. Aug. 10, 2022) (concluding that ALJ's decision was "substantially supported" because "while it is true that the ALJ did not use the word 'persuasive' in discussing [the doctor's] findings, even Plaintiff acknowledges that the ALJ noted 'on at least four separate occasions that the ALJ's findings were consistent with [the doctor's] opinion'."), *report and recommendation adopted*, No. 21-14097-CIV, 2023 WL 2008450, at *5 (S.D. Fla. Feb. 15, 2023).

16

factors.  The ALJ only recites certain clinical findings, but merely summarizing certain medical evidence in the record is insufficient.

For example, in *McDaniel v. Commissioner of Social Security*, the court reversed the ALJ's decision because the ALJ failed to adequately address the supportability factor when evaluating the opinion of a consultative examiner.  *McDaniel*, No. 6:21-cv-125-LHP, 2022 WL 11348279, at *5-6 (M.D. Fla. July 5, 2022).  In particular, the ALJ recited the functional restrictions that the examiner identified and then stated as follows:

> The consultative examiner's opinion is not consistent with the overall evidence in the record or supported by objective medical evidence. For example, on exams, the claimant has demonstrated intact neurological findings in his extremities, normal strength, normal sensation, negative straight leg raise; normal reflexes; able to move from chair to table without pain; and no edema. (Exhibit 4F/13, 2F/3, 3F). The undersigned does not find use of a cane medically supported by the evidence in the record. The cane was not prescribed, and the evidence indicates that claimant has had normal gait and station without use of a cane.

*Id*. at *5.  The court found this explanation did not comply with the applicable regulations.  The court reasoned that "[w]hile the ALJ notes the inconsistencies between [the doctor's] opinion and the medical record at large, including the absence of a cane prescription, intact neurological findings, and no edema, the ALJ's decision lacks any meaningful supportability analysis."  *Id*.  The court also reasoned that "the exhibits the ALJ references are from other medical sources—[and] the ALJ nowhere explains how [the doctor's] own treatment and examination notes fail to support his opinions."  *Id*.

The same is true here. The ALJ merely recites excerpts of certain functional limitations set forth in each of the Challenged Medical Opinions and then recites various medical findings without making any connection between those findings and the functional limitations identified.  R. 32-33.  Nor does the ALJ explain how those findings are inconsistent with, or undermine the Challenged

Medical Opinions.  Indeed, some of the medical findings noted by the ALJ appear unrelated to the conclusions set forth in the Challenged Medical Opinions.  For example, the ALJ found that Dr. Vaz's opinion was "overly restrictive" and referred to medical findings regarding Plaintiff's motor strength, straight leg tests, sensation and mental status examinations.  *Id*.   However, Dr. Vaz's opinion is based upon Plaintiff's gastrointestinal problems, so it is not evident how these physical and mental findings render his opinion inconsistent with or unsupported by the record.  "For the Court to attempt to guess what particular records support the ALJ's decision with respect to [the Challenged Medical Opinions] would require the Court to reweigh the evidence—which it may not do." *McDaniel*, 2022 WL 11348279 at *6.

In short, "the ALJ cannot merely summarize the evidence, as a whole, and then conclude that [medical] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [the medical] opinions and why." *Brown*, 2021 WL 2917562 at *4 (citation omitted); *see also Vicente v. Comm'r of Soc. Sec.*, No. 6:22-cv-01057, 2023 WL 2864407 at *6 (M.D. Fla. April 10, 2023) ("[E]ven if the ALJ adequately summarized the evidence in the record, the revised regulations required her to specifically address and 'explain' both the supportability and consistency of [the] opinion in light of the evidence.").  It is also notable that in evaluating other medical opinions, the ALJ explicitly stated the persuasiveness she assigned.  In particular, the ALJ stated that she found the assessments of the State agency consultants "not persuasive," the opinion of consultative examiner Dr. Khan "somewhat persuasive" and the opinion of consultive examiner Dr. Leiva "persuasive."  R. 36-37.  Yet the ALJ failed to undergo the same analysis as to the opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick.

For the forgoing reasons, the undersigned concludes that the ALJ erred in failing to apply the correct legal standards in evaluating the Challenged Medical Opinions.

**B. The ALJ Erred By Grouping The Challenged Medical Opinions Into A Single Analysis.**

Plaintiff argues that the ALJ also erred in grouping the Challenged Medical Opinions together in a single evaluation because the Opinions are from four different medical sources, that is Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick, each with different specialties. ECF No. [16] at 8. The applicable regulation states that "when *a* medical source provides multiple medical opinion(s)…we will articulate how we considered the medical opinions … from *that medical source* together in a single analysis using the factors listed in [§ 404.1520c(c)]." 20 C.F.R. § 404.1520c(b)(1) (emphasis supplied). The Commissioner concedes that "the regulation does envision combining multiple opinions from the same source" but states that the regulation "does not require that an ALJ discuss each opinion[']s consistency and supportability separate from one another." ECF No. [21] at 10. To be sure, the Commissioner is correct where a medical provider has issued multiple opinions. 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion … from *one* medical source individually.") (emphasis supplied). However, that is not the case here given that the ALJ grouped together opinions from multiple medical *sources* in a single analysis, not multiple opinions from the *same* source. Section 404.1520c(b)(1) makes clear that this was error.

**C. The ALJ's Errors Were Not Harmless.**

Plaintiff argues that the ALJ's failure to properly evaluate the Challenged Medical Opinions cannot be considered harmless error. ECF No. [16] at 11-12. The Commissioner asserts that "the ALJ's decision reflects that the ALJ gave full consideration in evaluating the opinions of record and substantial evidence supports the ALJ's decision." ECF No. [21] at 12. The

Commissioner's argument misses the mark.  Because the limitations set forth in the Challenged Medical Opinions that the ALJ failed to properly consider contradict the RFC, the errors noted above are not harmless.

For example, the RFC states that Plaintiff "can perform simple tasks for up to two hours without a break."  R. 33.  However, Dr. Vaz opined that Plaintiff could only sit for thirty to forty-five minutes at a time due to "urgency to use [the] bathroom" and would need eight to ten unscheduled breaks during a workday, each lasting fifteen to twenty minutes, caused by bloody stool or diarrhea and mucus.  *Id*. R. 548.  Further, Dr. Gonzalez opined that Plaintiff had a "seriously limited" ability to maintain attention for a two-hour period.  R. 555.  Given the inconsistencies between the RFC and the Challenged Medical Opinions, "the Court cannot say that the failure to address [the Challenged Medical Opinions] was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ."  *Vicente*, 2023 WL 2864407 at *6 (quoting *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006)); *see also McDermott v. Kijakazi*, No. 8:21-cv-756-AAS, 2022 WL 2115492, at *3 (M.D. Fla. June 13, 2022) ("Since the ALJ failed to adequately discuss the supportability and consistency of Dr. Levasseur's medical opinions, this court cannot conclude that the ALJ's 'lack of explicit consideration' constitutes harmless error.") (citing *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005)).

## V.      CONCLUSION

In sum, the ALJ failed to apply the correct legal standards in evaluating the medical opinions of Dr. Vaz, Dr. Carpman, Dr. Gonzalez and Ms. Riddick.  Given that the Challenged Medical Opinions appear to conflict with the RFC, the ALJ's failure to adequately address those Opinions renders the ALJ's decision unsupported by substantial evidence. For these reasons, the

undersigned concludes that remand is necessary so that the ALJ may properly consider and articulate the persuasiveness of the opinion evidence, including each of the Medical Opinions, based upon the supportability and consistency factors, in accordance with 20 C.F.R. §404.1520c. *See Vicente*, 2023 WL 2864407 at *7; *Brown*,  2021 WL 2917562 at *4; *McDaniel*, 2022 WL 11348279 at *6; *Pierson v. Comm'r of Soc. Sec.*, No. 6:19-cv-01515-RBD-DCI, 2020 WL 1957597, at *6-7 (M.D. Fla. April 8, 2020).

## VI.   RECOMMENDATION

For the foregoing reasons, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. [16], be **GRANTED** and this case remanded to the Commissioner for further proceedings consistent with this Report and Recommendation.  The undersigned **FURTHER RECOMMENDS** that Defendant's Motion for Summary Judgment, ECF No. [20], be **DENIED**.

## VII.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida on August 11, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**